ORIGINAL

REISSUED FOR PUBLICATION
JAN 30 2018
OSM
U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
No. 16-1634V
Filed: January 3, 2018
Not to be Published.

FILED
JAN - 3 2018
U.S. COURT OF FEDERAL CLAIMS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| KIRSTIN DAWN BARDON, | \* |
| Petitioner, | \* Hepatitis B vaccine; chronic |
|  | \* encephalopathy; paresthesia; neuritis; |
| v. | \* conflicting statements from treater; no |
|  | \* basis for opinion on causation; dismissal |
| SECRETARY OF HEALTH | \* |
| AND HUMAN SERVICES, | \* |
| Respondent. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Kirstin Dawn Bardon, Camarillo, CA, for petitioner (pro se).
Amy P. Kokot, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION[1]

On December 13, 2016, petitioner filed a petition pro se under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that hepatitis B vaccine she received on January 23, 2014 caused her chronic encephalopathy, paresthesia, and neuritis, whose onset was one day after vaccination. Pet. at Preamble.

On December 8, 2017, the undersigned issued an Order to Show Cause why this case should not be dismissed, giving petitioner until December 29, 2017 to respond. Petitioner did not respond.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

This petition is now **DISMISSED** for failure to prosecute and failure to obey the undersigned's Order to Show Cause, under Vaccine Rule 21(b)(1)

**FACTS**

On January 23, 2014, petitioner saw Dr. Linda England. Med. recs. Ex. 3, at 5. Petitioner had LASIK surgery the day before. Her left eye was slightly red. Her active problems were common migraine without aura, asthma, and foot fungus. She had a pre-employment examination for EMT training and received her first hepatitis B vaccination. Id. at 7.

On February 3, 2014, petitioner saw Dr. Marc Wright, who recorded a history that petitioner had laser surgery one week earlier and had been feeling dizzy since then with headache. Id. at 10.

On February 7, 2014, petitioner returned to Dr. England, complaining of dizziness and headache since her LASIK surgery on January 22, 2014. Id. at 13. All of petitioner's lab work was normal. She did not have dizziness with her eyes closed. Petitioner complained of intermittent tingling. Someone at Urgent Care suggested she see a neurologist. Dr. England diagnosed petitioner with anxiety disorder. Id.

On February 16, 2014, petitioner went to Community Memorial Hospital where she gave a history to PA Shannon McFarland complaining that she had a tension headache. Med. recs. Ex. 11, at 1. She said that since her LASIK surgery on January 22, 2014, she had been having an intermittent headache which worsened that day. The pain radiated to the back of her head into her neck and was a 6 out of 10 on the pain scale. Since her surgery for astigmatism, she had been having persistent headaches and double vision. She did not have a history of prior headaches. The headaches started the day after surgery and had continued almost daily. She denied fever, congestion, nausea, vomiting, cough, or recent illness. On physical examination, petitioner did not have any focal deficits, either motor or sensory. Id. Dr. Noah Levit diagnosed petitioner with headache. Id. at 2.

On February 25, 2014, petitioner saw Dr. J. Timothy Sheehy, a neurologist. Med. recs. Ex. 4, at 1. Her history was that she had LASIK surgery on January 22, 2014 and, one day later, developed her current pattern of headache, which she rated a 6 out of 10, which was worse when she had an upright posture and was promptly relieved to a 3 out of 10 when she was recumbent. She complained also of dizziness. One week ago, she had three days of nausea, vomiting, and diarrhea, attributed to stomach flu. Id. Petitioner had an occasional sense of double vision. Dr. Sheehy's impression was spontaneous intracranial hypotension. Id.

On February 26, 2014, petitioner had a CT scan of her brain without contrast. Med. recs. Ex. 11, at 3. This was compared with an August 2009 CT scan of her brain which was reported as normal. The 2014 CT scan of her brain was also normal. Id.

On February 28, 2014, petitioner went to Stanley D. Jensen, a chiropractor, complaining

2

of one month of neck pain and headache. Med. recs. Ex. 9, at 2.

On March 11, 2014, petitioner returned to Dr. Marc Wright, complaining of neck and shoulder pain for one and one-half months. Med. recs. Ex. 3, at 18.

On March 24, 2014, petitioner saw Dr. Richard Handin, telling him that she had a persistent headache beginning two months previous. Med. recs. Ex. 11, at 4. Petitioner's husband stated petitioner had LASIK eye surgery and began taking Cipro eye drops afterward. Then, her symptoms began and did not subside. Her pain was located at the top of her posterior neck/base of her head, and radiated upward. Petitioner's husband stated petitioner initially complained that the area felt tight and swollen, but now she described it as a burning, tingling sensation in her skull. Petitioner reported weakness in both hands. Her husband noted petitioner had been in a brain fog lately. She saw a neurologist and had a normal CT scan and normal brain MRI. On physical examination, petitioner did not have any motor deficits or focal sensory deficits. Id. She had good bilateral strength and sensation. Id. at 5. Her deep tendon reflexes were normal and symmetrical. She did not have adenopathy in her neck. Dr. Marc A. Reinoso evaluated petitioner who complained of occipital headache and posterior neck pain which had waxed and waned over the prior two months, starting after she had LASIK eye surgery. Petitioner described the pain as stiffness and rated it as 10 out of 10 in severity. She stated it improved when she lay flat. She did not have associated trauma or fever, but she complained of her left hand being weak and of tingling in the left side of her head. She had a negative head CT scan, negative brain MRI, and negative lab work. Her tests were unremarkable. An MRI of her neck that day was negative. Id.

On March 24, 2014, petitioner had an MRI done of her cervical spine with and without contrast because of her complaints of head and neck pain, stiffness, and bilateral arm weakness. Id. at 8. The MRI of her cervical spine was normal. Id.

On March 25, 2014, petitioner saw nurse practitioner Angalee Swaney, complaining of ongoing pain/tingling/burning for six days. Med. recs. Ex. 3, at 22. She had previous pain lasting two months. She had a negative MRI of her neck and back. She continued to have a headache she rated as level 8 although she had seen a chiropractor twice and had some massage therapy. A neurologist evaluated her and did a neurological examination that was normal. She said she had a burning sensation in her scalp and tingling down her arms. Her active problems were: anxiety disorder, migraine, dizziness, headache, and neck pain. Id. NP Swaney reassured petitioner that muscle strain in her neck could be the cause of all her symptoms. Id. at 24.

On April 3, 2014, petitioner had a Point of Contact Assessment with RN Melissa Banos. Med. recs. Ex. 10, at 9. Petitioner had LASIK eye surgery on January 22, 2014. Afterward, she had many complications: double vision, blurred vision, she had to drop out of EMT school, her depression increased, and she had anxiety and crying spells. She continued with anxiety, depression, and crying. She had marital problems for eight years. Id. She had situational depression since her eye surgery. Id. at 10. She had decreased energy since the onset of symptoms. Id. She also had indecisiveness, social withdrawal, decreased interest in activities,

3

and irritability/anger. Id. She had sleep disturbance for two months, difficulty going to sleep, frequent awakening, and severe anxiety. Id. at 12. Petitioner's medical history was: complications from bad eye surgery; blurred, double vision; headache; neck pain; stress; impaired ability to parent; and marital problems. Id. at 14. Her son was eight years old. Id. at 15. Her family history was: a mother with depression who was on ETOH; a maternal uncle with severe anxiety; and a brother on drugs. Id. Petitioner's immunizations were current. Id. at 21.

From April 4–18, 2014, petitioner was at Aurora Vista Del Mar, LLC. Id. at 1. On April 4, 2014, Dr. Manju Sharma-Beatty wrote a Psychiatric Admission History of partial hospitalization for depression and suicidal ideation. Id. at 2. The history of the present illness was petitioner was a 29-year-old with one child, who presented with recurrent suicidal ideation with no specific plan. She had a depressed mood, and was tense. She had multiple somatic complaints and was tearful. She reported anhedonia and isolative, irritable behavior for about three months. She had taken Xanax and Klonopin without benefit. She was recently started on Zoloft. She started seeing a psychiatrist about one month previously. Her mental status exam showed she was depressed and anxious, and her affect was constricted. Dr. Sharma-Beatty's diagnosis was major depressive disorder, which was severe and recurrent, rule out generalized anxiety disorder. Id. Petitioner had problems with primary support and related to her social environment. Id. at 3. On April 7, 2014, petitioner denied she had acute physical symptoms. Id. at 7. The doctor's impression was that petitioner was physically healthy. Id. at 8. Petitioner said, "I'm fine. No stressors. Being here is an accomplishment." Id. at 42. On April 9, 2014, petitioner stated, "I feel really stressed out. I had a hard night with very little sleep. I just need to calm down; can't think of any issues today." Id. at 43. Petitioner said, "I've been having marital problems. My husband and I fight a lot. I know it's unhealthy. I'm a stay at home mom." Id. Petitioner began to cry. "I shake when I go home." Id. On April 10, 2014, petitioner said, "I've had a panic attack; it's terrifying." "I started losing my hair due to stress the last two months." Id. at 44. On April 18, 2014, petitioner said, "I plan to become an EMT and move to New Mexico without my son." Id. at 50.

On April 29, 2014, petitioner saw Dr. Meryl L. Shapiro-Tuchin for a diplopia evaluation. Med. recs. Ex. 12, at 1. Petitioner said she had had double vision for three months. The onset was right after a LASIK procedure in both eyes. The images were up and down (shadow). Petitioner also complained of having trouble focusing with near visual acuity. On a review of systems, Dr. Shapiro-Tuchin found petitioner to be normal including neurologically. Id. at 3. Dr. Shapiro-Tuchin's diagnosis was unspecified mild left amblyopia (impairment of vision due to abnormal development) due to an unknown reason, and monocular diploplia. Petitioner also had a bad reaction to the drops she used after LASIK surgery. Id.

On May 8, 2014, petitioner saw FNP Patricia Wade, who noted petitioner had various symptoms waxing and waning since she had LASIK surgery in January 2014. Med. recs. Ex. 3, at 25. She had difficulty recovering and had blurry vision for three weeks. Now she needed another procedure to fine tune the results. She had had headaches, neck pain, tremors of her hands, with sharp intermittent shooting pains in her upper arms, and trouble sleeping. A psychiatrist put petitioner back on a low dose of Zoloft and some Klonopin. She had been

4

treated for anxiety in the past. The problem list was: agoraphobia with panic disorder, cervicalgia, depressive disorder, disturbance of skin sensation, generalized anxiety disorder, lumbago, and backache. Id. Petitioner smoked every day. Id. at 26. She had a history of generalized disorder and depression. Id. FNP Wade's assessment was anxiety disorder due to general medical condition with anxiety. Id. at 28. FNP Wade explained to petitioner "that she has had a reaction to stress. . . ." Id.

On June 9, 2014, petitioner returned to FNP Wade, telling her she stopped taking her medications and her hands were no longer shaking. Id. at 29. Her neck pain and stiffness continued with tingling and sharp pain in her head. An MRI of her neck and brain were normal. For the last six months, she was slowly improving but, at times, she could not think clearly and felt as if she were in a fog. She was hesitant with her speech and had difficulty finding words. She felt disoriented at times. Some days, she was in bed all day since she felt better lying down. Id. Petitioner was tired most of the time. Id. at 31. Her most recent lab results were negative with a negative antinuclear antibody ("ANA"). Id.

On August 1, 2014, petitioner again saw Dr. J. Timothy Sheehy, a neurologist, whom she had last seen on February 25, 2014. Med. recs. Ex. 4, at 3. She had headaches with pain of 6 out of 10 daily until four months previously (April 2014) when the headaches decreased to a functioning headache of 3-4 out of 10 all day every day. She was on a treadmill 20 minutes a day. Twice a week, she had occasional sharp pains, on a scale of 6 out of 10, from 10 minutes to 12 hours in duration. She felt her left hand shook occasionally one or twice a week. She reported night sweats. Three weeks earlier, she awoke with spinal pain lasting 12 hours which resolved. Petitioner asked Dr. Sheehy about toxicity screening and whether she had a possible complication of the silicone implants she received four years earlier. She had been vomiting four to five times a month since January. She took one to two Vicodan pills per week and Tylenol or ibuprofen. She had taken a total of 240 pills per month for the last five months. Id. Her MRI scan on March 10, 2014 was unremarkable. Id. at 4. Lab tests done on May 15, 2014 were unremarkable, including a complete blood count, thyroid stimulating hormone, a chemical panel, and ANA. She smoked two packs of cigarettes a year. Dr. Sheehy noted: "I am not sure how to explain Kirstin's headache syndrome. I do not think there is a serious cause based upon the improving pattern and the unremarkable imaging studies and normal neurologic exam. When I saw her last February, spontaneous intracranial hypotension was considered, but as the problem has evolved that seems to be much less likely; and the MRI does not demonstrate typical findings. She may have so-called chronic recurring headache syndrome. She also may have medication overuse headache syndrome." Id.

On August 5, 2014, petitioner returned to FNP Wade, telling her that her headache pain was 4 out of 10. Id. at 32. Petitioner got episodic sharper pains. She was losing her hair. She had neck issues and was going to physical therapy. She had tingling in her hands and feet and hot flashes at night. She had been to the emergency room several times because of pain. She was chronically fatigued and took naps during the day. All these symptoms dated back to the LASIK surgery on her eyes in January 2014. Id. FNP Wade's assessment was headache and fatigue. Id. at 34.

5

On August 7, 2014, petitioner saw Dr. Dana Jennings, giving a history of having 103 degree temperature the prior night. Id. at 35. Dr. Jennings' assessment was headache and fever. Id. at 37.

On August 26, 2014, petitioner saw her second neurologist, Dr. Patrick L.S. Kong. Med. recs. Ex. 2, at 1. Her history was that, starting on January 24, 2014, petitioner had bilateral pressure headaches, dizziness, imbalance, a feverish feeling, a warm body with some diffuse aching pain of the arms and legs, initial vomiting as if she had flu symptoms, and some left-hand tremor. Id. A brain MRI done on March 10, 2014 was unremarkable except for some mild microvascular ischemic changes. Id. at 2. The symptoms gradually improved over six months 60-70 percent. She still had daily headaches, occasional sharp pains, some tingling and numbness of both arms and legs, mild occasional tremors of the left hand, intermittent diffuse pain and aches, and a warm body. Id. Petitioner was positive for anxiety. Id. Dr. Hong's impression was: "The patient possibly is suffering from a side-effect or reaction to the hepatitis B vaccine." Id. at 3. (This is the first mention of petitioner's hepatitis B vaccination in seven months.) Dr. Hong doubted that petitioner had symptoms related to LASIK surgery. Id.

On September 15, 2014, Dr. Kong performed a nerve conduction study and electromyography ("EMG") on petitioner. Id. at 6. The results were normal. Id.

On September 26, 2014, petitioner returned to Dr. Dana Jennings, stating she felt 60–65 percent improved. Med. recs. Ex. 3, at 39. She wanted to try the holistic route. She had no new symptoms except for cystic acne. Id.

On March 23, 2015, petitioner saw Dr. Jennings again, saying she was getting more burning/tingling all over her body that moved and lasted one to two days and then resolved. Id. at 43. These symptoms seemed to last longer when she was feeling anxious. She got easily stressed out. She had been on SSRO (selective serotonin reuptake inhibitor) in the past. Id. Dr. Jennings' assessment was anxiety and disturbance of skin sensation. Id. at 47. Her lab results did not explain her symptoms. Id.

On January 13, 2016, petitioner returned to Dr. Hong, her second neurologist. Med. recs. Ex. 2, at 13. She complained of numbness of her right face and intermittent numbness of her left arm and left leg, with burning paresthesia, and left-handed weakness. Dr. Kong noted that in 2014, she complained of similar symptoms. Id. He states she said that, since December 2014, she had numbness of her left arm and left leg, the right side of her face, and sometimes her right arm and right leg. Id. at 14. She claimed she had burning paresthesia like a sunburn and intermittent weakness of her left hand. Three weeks earlier, she had one episode of visual disturbance of her right eye visual field. She said she lost part of the vision in her right visual field and saw flashing lights at the edge of her right visual field followed by severe headache for three or four hours. One and one-half weeks earlier, she had an episode of imbalance when she was on the treadmill. Id. Dr. Hong did a physical examination. Id. at 15. Petitioner did not have any obvious focal weakness or pathological reflexes. She did not have any definite

6

objective sensory loss on examination. Her gait was normal. Dr. Hong's impression was that petitioner had a history of significant burning paresthesia. The cause was still uncertain. He would need to rule out a reaction to hepatitis B vaccine, rule out multiple sclerosis, and rule out vasculitis or other possibilities. She had an episode of seeing flashing lights and visual disturbance followed by severe headache which was possibly a migraine headache. Petitioner's previous work up one to two years ago had no definite objective finding. Petitioner states that, since December 2014, her symptoms especially paresthesia, had been worsening. At times, she felt off balance. Id.

On February 1, 2016, petitioner had an MRI of her head done. Id. at 17. She had scattered probable mild microvessel ischemic changes. There was no significant interval change when compared to the head MRI of March 10, 2014. Id.

On June 12, 2017, petitioner filed a note Dr. Hong wrote on a prescription paid, dated February 17, 2016, more than a year earlier, stating:

> To Whom It May Concern:
> This is to state that the above named person [Kirstin Bardon] probably had a severe adverse reaction to Hepatitis B vaccine.

Ex. 13, at 1. Dr. Hong did not give a basis for his opinion or an explanation why he changed his opinion from his earlier opinion on January 13, 2016 that the cause was still uncertain.

### **Further Proceedings**

On June 29, 2017, the undersigned held a telephonic status conference with petitioner and respondent's counsel. Following the conference, the undersigned issued an Order stating that none of petitioner's medical records supported her allegation that receipt of the hepatitis B vaccination caused her to suffer chronic encephalopathy, paresthesia, and neuritis. The undersigned stated she could not rule for petitioner based on her allegations alone, unsupported by medical records or a medical opinion from an expert. Moreover, Dr. Hong's notation dated February 17, 2016 did not satisfy petitioner's burden of proof since Dr. Kong did not specify what petitioner's injuries were or explain how hepatitis B vaccine caused them. In order for petitioner to satisfy her burden of proof, she had to file a report or letter from an expert detailing a medical theory connecting her receipt of the vaccine and her injury, providing a logical sequence of cause and effect showing the vaccine was the reason for her injury and that the timing was appropriate for causation. The undersigned ordered petitioner to file a report or letter from either Dr. Kong or another medical doctor or a status report by July 31, 2017 explaining how she wished to proceed with the case.

On July 31, 2017, petitioner filed a status report and stated she wished to proceed with the case. She stated Dr. Kong had recently retired and he did not answer her correspondence to his forwarding address. Petitioner stated she was in the process of identifying a suitable expert to replace Dr. Kong and produce a report or letter meeting the criteria the underlined outlined.

7

She requested a reasonable time in which to accomplish this.

On August 2, 2017, the undersigned issued an Order giving petitioner until September 29, 2017 to file one of three documents: (1) an expert report; (2) a motion dismissing the case; or (3) a status report explaining how she wanted to proceed.

On October 2, 2017, petitioner filed a status report stating she identified a neurologist, Dr. Shaheen E. Lakhan, who agreed to conduct a preliminary review of petitioner's records, prepare a cost estimate for his services, and ultimately provide a report. Petitioner asked for the undersigned to set a new deadline.

On October 4, 2017, the undersigned gave petitioner until December 4, 2017 either to file an expert report or a motion to dismiss.

Petitioner did not file anything by December 4, 2017.

On December 8, 2017, the undersigned issued an Order to Show Cause why the case should not be dismissed, giving petitioner a deadline of December 29, 2017 to respond. The undersigned noted that the undersigned's law clerk had attempted three times to contact petitioner to set a status conference. She e-mailed petitioner and respondent's counsel on December 5 and 7, 2017 and left a voice mail at petitioner's cell phone on December 7, 2017. Petitioner did not respond to any of these attempts to contact her.

## DISCUSSION

To satisfy her burden of proving causation in fact, petitioner must prove by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen v. Sec'y of HHS, 418 F.3d 1274, 1278 (Fed. Cir. 2005). In Althen, the Federal Circuit quoted its opinion in Grant v. Secretary of Health and Human Services, 956 F.2d 1144, 1148 (Fed. Cir. 1992):

> A persuasive medical theory is demonstrated by "proof of a logical sequence of cause of and effect showing that the vaccination was the reason for the injury [,]" the logical sequence being supported by a "reputable medical or scientific explanation[,]" i.e., "evidence in the form of scientific studies or expert medical testimony[.]"

418 F.3d at 1278.

Without more, "evidence showing an absence of other causes does not meet petitioner's affirmative duty to show actual or legal causation." Grant, 956 F.2d at 1149. Mere temporal association is not sufficient to prove causation in fact. Id. at 1148.

Petitioner must show not only that but for hepatitis B vaccine, she would not have chronic encephalopathy, paresthesia, and neuritis, but also that hepatitis B vaccine was a substantial factor in causing her chronic encephalopathy, paresthesia, and neuritis. Shyface v. Sec'y of HHS, 165 F.3d 1344, 1352 (Fed. Cir. 1999). She must also prove she has chronic encephalopathy, paresthesia, and neuritis. None of petitioner's medical examinations by numerous physicians diagnosed her with encephalopathy and neuritis. Petitioner complained of paresthesia, but her nerve conduction test and electromyography were normal. Her sensory examination was normal. Dr. Hong is the only physician who even contemplated whether she might have had a reaction to hepatitis B vaccine, but he said it was only possible and regarded the cause of petitioner's many complaints uncertain.

Petitioner was able to obtain a one-sentence statement from Dr. Hong that contradicted his office notes. He stated in that note that she probably had a severe adverse reaction to hepatitis B vaccine, but did not diagnose what her reaction was and did not give a basis for his one-sentence statement on a prescription pad. This does not satisfy the three requirements of the Federal Circuit in Althen. An expert's opinion is only as sound as the reasons supporting it. Perriera v. Sec'y of HHS, 33 F.3d 1375, 1377 n.6 (Fed. Cir. 1994). Dr. Hong's hasty sentence has no reasons and no evidence supporting it. Therefore, it does not meet petitioner's burden.

The Vaccine Act, 42 U.S.C. § 300aa-13(a)(1), prohibits the undersigned from ruling for petitioner based solely on her allegations unsubstantiated by medical records or medical opinion. The medical records do not support petitioner's allegations. She has not filed an expert opinion in support of her allegations that would satisfy the three prongs of Althen. Although the undersigned afforded petitioner the opportunity to file another expert's opinion, since Dr. Hong retired and would not respond to her letters, she has not done so.

The undersigned **DISMISSES** this petition for failure to prosecute and failure to obey the undersigned's Order to Show Cause, under Vaccine Rule 21(b)(1).

## CONCLUSION

The petition is **DISMISSED**. In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED.**

Dated: January 3, 2018

/s/ Laura D. Millman
Laura D. Millman
Special Master

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.